# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

KATHLEEN R. O'BRIEN    )
           )
    Plaintiff,  )
           )
  v.         )  Case No. 13-2255-RDR
           )
           )
           )
CAROLYN W. COLVIN    )
Acting Commissioner of  )
Social Security     )
           )
    Defendant.  )

## MEMORANDUM AND ORDER

On June 9, 2010, plaintiff filed an application for social security disability insurance benefits. This application alleged a disability onset date of October 31, 2009. A hearing was conducted upon plaintiff's application on March 9, 2012 and a supplemental hearing was held on May 24, 2012. The administrative law judge (ALJ) considered the evidence and decided on June 7, 2012 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant.

This case is now before the court upon plaintiff's motion to reverse and remand the decision to deny plaintiff's application for benefits. Plaintiff is a well-educated young woman who has suffered an unfortunate number of medical problems. Although plaintiff's treating physician has remarked that plaintiff is disabled from gainful employment, the ALJ

determined that the treating physician's opinion was not consistent with the entire record. The ALJ was more persuaded by the reviews of nonexamining physicians. Although the opinion of a treating physician is entitled to deference, the court has decided that the ALJ's analysis follows the law and is supported by substantial evidence. For this reason and for the other reasons which follow, the court shall reject plaintiff's arguments to reverse the decision to deny benefits.

I.  STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;"

it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II. THE ALJ'S DECISION (Tr. 11-19).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 12-13). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1.  Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In this case, the ALJ decided plaintiff's application should be denied on the basis of the fourth step of the evaluation process.  The ALJ decided that plaintiff maintained the residual functional capacity to perform past relevant work as a secretary, a tariff agent, a billing clerk, a programmer analyst and a conference services coordinator.  It is noteworthy that at step four, plaintiff has the burden of demonstrating that her impairments prevent her from performing her previous work.  Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005).

The ALJ made the following specific findings in her decision.  First, plaintiff meets the insured status requirements for Social Security benefits through December 31, 2014.  Second, plaintiff did not engage in substantial gainful activity after October 31, 2009, the alleged onset date of disability.  Third, plaintiff has the following severe

impairments: fibromyalgia and interstitial cystitis ("IC").[1]
Fourth, plaintiff does not have an impairment or combination of
impairments that meet or medically equal the listed impairments
in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff
has the residual functional capacity: to lift and carry ten
pounds frequently and twenty pounds occasionally; she can sit,
stand, or walk for six hours each in an eight-hour day; she can
frequently balance and bend, but she should only occasionally
crawl and climb stairs, ladders, ropes, or scaffolds; she has no
manipulative, communicative, or visual workplace limitations;
she should avoid unprotected heights and concentrated exposure
to cold, wetness, and humidity; and she would need to use the
bathroom at will. (Tr. 15). The ALJ also found that plaintiff
has no more than mild limitations in the activities of daily
living, no more than mild limitations in social functioning, and
no more than mild limitations in concentration, persistence or
pace. (Tr. 14).

---

[1] According to SSR 02-2p: IC "is a complex, chronic bladder disorder
characterized by urinary frequency, urinary urgency, and pelvic pain. IC
occurs most frequently in women . . . IC may be associated with other
disorders, such as fibromyalgia, chronic fatigue syndrome, allergies,
irritable bowel syndrome, inflammatory bowel disease, endometriosis, and
vulvodynia (vulvar/vaginal pain). IC also may be associated with systemic
lupus erythematosus.
   The symptoms of IC may vary in incidence, duration, and severity. The
causes of IC are currently unknown, and treatments are directed towards
relief of symptoms. . . . [T]here are many treatments available, and
individuals may obtain some measure of relief. However, response to
treatment is variable, and some individuals may have symptoms that are
intractable to the current treatments available." 2002 WL 31452367.

III. THE ALJ PROPERLY CONSIDERED ANY MENTAL IMPAIRMENT IN DETERMINING PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY.

Plaintiff's first argument to reverse the decision to deny benefits is that the ALJ did not include plaintiff's difficulties in social functioning and maintaining concentration, persistence or pace in the ALJ's consideration of plaintiff's residual functional capacity ("RFC"). Doc. No. 10, p. 21. At steps two and three of the analytical process, the ALJ concluded that plaintiff had "no more than a mild" limitation in activities of daily living, social functioning, and concentration, persistence or pace because of any mental dysfunction. (Tr. 14). The ALJ stated in her decision that these limitations were "not a residual functional capacity assessment." (Tr. 15). This is in accord with the Tenth Circuit's decision in Wells v. Colvin, 727 F.3d 1061, 1069 (10th Cir. 2013) where, quoting SSR 96-8p, the court stated:

> In assessing a claimant's RFC, "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria [for severity] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. . . . The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments and summarized on the [Psychiatric Review Technique Form]."

The ALJ repeated the above underlined language in her decision on page 15 then said that "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 15). The RFC findings that the ALJ listed later on the same page expressed <u>no</u> mental limitations. In discussing the evidence in the record, the ALJ mentioned plaintiff's claims of anxiety and difficulty concentrating (although plaintiff did not list a mental impairment in her application for disability benefits). (Tr. 16). She also mentioned the treating physician's diagnosis of generalized anxiety disorder and description of cognitive problems and difficulty handling stress. (Tr. 17 & 18). The ALJ, however, concluded that no mental limitation should be included as part of plaintiff's RFC.

These findings are not inconsistent with the ALJ's step two findings which were that plaintiff had "no more than mild" limitations in mental functioning. Nor are they clearly inconsistent with Dr. R.E. Schulman's review of plaintiff's medical records and of functional reports done by plaintiff and third parties. The notes made by Dr. Schulman stated in part:

> Employer from 4/08 – 3/10 stated [plaintiff] generally could do job with no mental problems. [Plaintiff] could learn job duties in an expected amount of time, accepted instructions, cooperated [with] co-workers, maintained adequate pace & regular [hours], adapted to

changes, understood/carried out simple directions in a
reasonable amount of time, understood/followed safety
guidelines, & needed an ordinary amount of
supervision.

(Tr. 578).

The functional reports, according to the ALJ, indicated
that plaintiff can:

> Provide for her own personal care, prepare meals, shop
> for groceries, drive, manage her money, read, watch
> television, clean around the house, do the laundry,
> iron, exercise, use a computer and work as a nanny.
> [Also] watch television . . . run errands, vacuum, and
> workout at the gym.

(Tr. 18).

The ALJ's decision stated that she considered the "entire
record" and "all symptoms and the extent to which these symptoms
can reasonably be accepted . . . with the . . . evidence" in
determining plaintiff's RFC. (Tr. 15). This, in addition to the
reference to plaintiff's mental symptoms and diagnoses, provide
the court with adequate grounds to believe that the ALJ took
into account plaintiff's alleged mental limitations when
formulating plaintiff's RFC. See Wall v. Astrue, 561 F.3d 1048,
1070 (10th Cir. 2009). Thus, the ALJ's decision and the record
support the conclusion that the ALJ considered plaintiff's
mental functional capacity and decided that the mental
impairments had an inconsequential effect upon plaintiff's RFC.

This case is comparable to Suttles v. Colvin, 543 Fed.Appx.
824 (10th Cir. 10/31/2013) where the court rejected a challenge

to the denial of benefits which argued that finding a mild degree of limitation because of depression at step two required finding, at step four, some limitation from depression in the claimant's RFC. The court denied the challenge finding that the ALJ did not improperly conflate the step two and step four evaluations and that there was no persuasive argument that the step four analysis lacked substantial evidence.

For the above-stated reasons the court rejects the arguments and case authority plaintiff cites to contend that the ALJ erred by failing to include her step two mental limitations findings in the RFC.

IV.  THE ALJ PROPERLY ANALYZED THE OPINION OF DR. SCHULMAN.

Plaintiff's next argument is that the ALJ erred by giving Dr. Schulman's opinion "substantial weight." Plaintiff contends that Dr. Schulman had no evidence available to him after June 2010 which was two years prior to the ALJ's decision. This is particularly important, according to plaintiff, because Dr. Schulman's opinion was not based upon an examination, only a review of records, or in this case, a review of less than the full record. In contrast to the cases cited by plaintiff (Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995) and Arn v. Astrue, 2011 WL 3876418 *3-4 (W.D.Mo. 9/1/2011)), there is no indication in the record of this case that important mental health evidence contrary to Dr. Schulman's opinion was developed

and submitted for the record after Dr. Schulman's review.
Therefore, the court shall reject this argument from plaintiff.

V.    THE ALJ DID NOT MAKE AN ERROR IN FAILING TO ORDER A
CONSULTATIVE MENTAL OR PHYSICAL EXAMINATION.

Plaintiff next contends that the ALJ erred in failing to obtain a consultative examination as to plaintiff's mental impairment. Plaintiff cites the provisions of SSR 02-2p which states regarding claims alleging IC:

> An individual with IC also may report symptoms suggestive of a mental impairment (for example, the individual may say that he or she is anxious or depressed, having difficulties with memory and concentration, etc.). If the evidence supports a possible discrete mental impairment or symptoms such as anxiety or depression resulting from the individual's IC or the side effects of medication, we will develop the possible mental impairment. If the evidence does not establish a medically determinable mental impairment, but does establish the presence of symptoms such as anxiety or depression resulting from the individual's IC or side effects of medication, we will determine whether there are any work-related functional limitations resulting from the symptoms.

2002 WL 32063799 at *4. This portion of SSR 02-2p does not require that an ALJ order a consultative examination to develop the record whenever there are symptoms or evidence that a person with IC has a mental impairment. Nevertheless, in this instance, the record was developed to some extent by the report of Dr. Schulman.

The Tenth Circuit has stated that an ALJ "has broad latitude in ordering a consultative examination." Diaz v. Sec'y

of Health & Human Servs., 898 F.2d 774, 778 (10th Cir. 1990). In

Diaz, the court found no error in refusing to order a

consultative examination when a complaint of depression was not

separable from the plaintiff's other nonexertional impairments,

which in the Diaz case were epileptic seizures and headaches.

Generally, a consultative examination should be ordered if the

plaintiff has shown "a reasonable possibility that a severe

impairment exists" and the examination would be "necessary or

helpful to resolve the issue of impairment." Hawkins v. Chater,

113 F.3d 1162, 1167 (10th Cir. 1997). Thus, it is relevant to

examine the position and statements of plaintiff and her counsel

during the administrative process.

> [W]hen the claimant is represented by counsel at the
> administrative hearing, the ALJ should ordinarily be
> entitled to rely on the claimant's counsel to
> structure and present claimant's case in a way that
> the claimant's claims are adequately explored. Thus,
> in a counseled case, the ALJ may ordinarily require
> counsel to identify the issue or issues requiring
> further development. . . . In the absence of such a
> request by counsel, we will not impose a duty on the
> ALJ to order a consultative examination unless the
> need for one is clearly established in the record.

Id. at 1167-68. Plaintiff's counsel did not request a

consultative examination or further development of the issue of

plaintiff's mental impairment, even after the ALJ announced that

she would conduct a supplemental hearing with a medical expert.

(Tr. 68). "The ALJ does not have to exhaust every possible

line of inquiry in an attempt to pursue every potential line of

questioning.  The standard is one of reasonable good judgment."

Id. at 1168.  In this instance, the court is convinced that the

ALJ exercised reasonable good judgment in developing the record.

Connected to the contention that the ALJ should have

ordered a consultative mental examination, plaintiff argues that

the non-treating physicians the ALJ relied upon to support her

RFC evaluation did not provide substantial evidence.  Doc. No.

10 at pp. 22-23.  So, plaintiff contends the ALJ also had a duty

to obtain a consultative physical examination.  In support of

this point, plaintiff cites Hutsell v. Massanari, 259 F.3d 707,

712 (8th Cir. 2001) where the court stated that "some medical

evidence must support the determination of [a] claimant's

[residual functional capacity]."  (Interior quotation omitted).

The court went on to say that the ALJ is required to consider at

least some supporting evidence from a medical professional to

properly determine RFC.  Id.

The propositions cited from Hutsell are not applicable here

for the following reasons.  First, contrary to the facts in

Hutsell, the ALJ's RFC assessment in this case was supported by

medical evidence in the form of opinions from Dr. Winkler and

Dr. Nimmagadda who reviewed the records in this case and made

conclusions similar to those drawn by the ALJ.  This constitutes

"medical evidence."  See 20 C.F.R. §§ 404.1512(b)(1),

404.1528(b).  Also, the Tenth Circuit has held that a report

from a non-examining physician may constitute substantial evidence. In <u>Gonzales v. Colvin</u>, 515 Fed.Appx. 716, 719 (10th Cir. 2/19/2013), the court held that an ALJ did not error in adopting the opinion of the nonexamining agency physician over the opinion of a treating doctor.[2] The ALJ's analysis should depend upon the support in the record for each doctor's opinion. The court shall discuss the support for the doctors opinions in the next section of this order.

VI. THE ALJ DID NOT ERR IN DISCREDITING THE OPINION OF DR. FOOS, PLAINTIFF'S TREATING PHYSICIAN, OR IN CREDITING THE OPINION OF DR. WINKLER, A NONEXAMINING PHYSICIAN.

Plaintiff's next series of arguments concern the weight attached by the ALJ to the opinion of plaintiff's treating doctor, Dr. Foos, and to the opinion of a nonexamining physician, Dr. Winkler.

Dr. Foos was plaintiff's personal physician for many years. Plaintiff consulted with Dr. Foos about her application for disability benefits and on April 14, 2010, Dr. Foos completed a physician's RFC form. (Tr. 533-536). The form is mostly in a checklist format. Dr. Foos indicates on the form (among other

---

[2] Also, in <u>Hawkins</u>, 113 F.3d at 1165, the court cited to the opinion of a psychiatrist who completed a psychiatric review technique form as "substantial evidence supporting the conclusion that the claimant does not suffer from a severe mental impairment" and as justification for the ALJ's refusal to order a further psychological examination. It is not completely clear, however, whether the psychiatrist was an examining or nonexamining doctor. In <u>Cavanaugh v. Apfel</u>, 1999 WL 59673 *1 (10th Cir. 2/09/1999), the psychiatrist in <u>Hawkins</u> is referred to as a "nonexamining physician." The relevant headnote in <u>Hawkins</u>, however, refers to the psychiatrist as an examining physician.

things):  that plaintiff cannot lift more than 10 pounds on a frequent basis; she cannot sit for more than one hour at a time or more than 4 hours in an 8-hour day; that plaintiff is never able to bend, squat, stoop crouch, crawl, kneel, climb or reach; that plaintiff suffers a debilitating level of pain and fatigue; that plaintiff also suffers dizziness and depression; and that plaintiff's impairments would cause plaintiff to be absent from work more than three times a month.  Dr. Foos also states on the form that plaintiff has been functioning at the level described on the form from 2006, years before plaintiff stopped working.

Almost two years after completing the RFC form Dr. Foos wrote a letter dated January 6, 2012 which states:

> [Plaintiff] is currently filing for SSI Disability for fibromyalgia which was diagnosed about 5 years ago. She also suffers from interstitial cystitis, generalized anxiety and significant sleep disorder. Her symptoms include severe fatigue, muscle and joint pain, depression, anxiety, trouble concentrating and cognitive deficits.  The interstitial cystitis causes bladder pain, a sense of urinary urgency and results in frequent trips to the bathroom to keep the bladder as empty as possible.  She is unable to sit or stand for prolonged periods of time.  She cannot do repetitive activities, lift anything over 10 pounds at all and less than 10 pounds only rarely, or do anything of a physical nature for any length of time. Her severe fatigue and cognitive problems make it hard to attend to tasks, stay organized, be efficient, or handle new and stressful situations.  If she works too hard one day she would be unable to go to work for the next 1-3 days due to fatigue and pain.  She would have frequent absences.

(Tr. 650).

The first step in evaluating a treating doctor's opinion is to determine whether the opinion is entitled to controlling weight. <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1119 (10th Cir. 2004). This is accomplished in two stages: 1) determining whether the opinion is supported by medically accepted clinical and laboratory diagnostic techniques and, if so, then 2) determining if the opinion is consistent with other substantial evidence in the record. <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ found fault with Dr. Foos's opinions at the second stage.

The second step in evaluating a treating doctor's opinion is determining what amount of weight to attach to the opinion if the opinion does not deserve controlling weight. An ALJ may consider such factors as: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; 3) the degree to which the physician's opinion is supported by relevant evidence; 4) consistency between the opinion and the record as a whole; 5) whether or not the physician is a specialist in the area upon which the opinion is rendered; and 6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. <u>Langley</u>, 373 F.3d at 1119.

The ALJ in this case gave Dr. Foos's opinions "very little weight." (Tr. 17). While the ALJ accepted Dr. Foos's diagnoses of fibromyalgia and IC, and noted Dr. Foos's treatment relationship with plaintiff, the ALJ negatively evaluated Dr. Foos's RFC assessment on the grounds that "Dr. Foos' opinions are inconsistent with the record as a whole and Dr. Foos's own treatment notes [and] Dr. Foos's opinions appear to be based on the claimant's subjective complaints." (Tr. 17). The ALJ largely repeated these comments (except for the reference to plaintiff's "subjective complaints") in concluding that the opinions in Dr. Foos's January 6, 2012 letter deserved "very little weight." (Tr. 18).

Dr. Winkler did not examine plaintiff and did not have a treatment relationship with plaintiff. She reviewed plaintiff's medical records and rendered an opinion regarding plaintiff's RFC which the ALJ more or less adopted as her own. In her decision, the ALJ stated that Dr. Winkler's opinions deserved "very substantial weight." (Tr. 16). The ALJ's justification for this evaluation was that "Dr. Winkler had the benefit of reviewing the entire medical record and her opinions are consistent with the weight of the evidence and her area of expertise." (Tr. 16). Dr. Winkler is board certified in internal medicine and rheumatology.

It appears to the court that the ALJ's primary ground for crediting Dr. Winkler's opinions and discrediting Dr. Foos's opinions is consistency with the "weight of the record." The ALJ does not elaborate upon why Dr. Winkler's particular expertise or access to the entire medical record provide her opinions with greater credibility over Dr. Foos's long relationship with plaintiff as a treating physician.[3] The ALJ does not mention Dr. Foos's credentials and does not indicate what significant parts of the medical record Dr. Foos may not have examined. So, the court will concentrate upon the issue of consistency with the record as a whole. This job is made more difficult because after stating that Dr. Winkler's opinions are consistent with the record and that Dr. Foos's opinions are not consistent with the record, the ALJ does not directly proceed to explain why.

The ALJ, however, does make the following statements in her decision which obviously played a role in her analysis of Dr. Foos's and Dr. Winkler's opinions.

> [Plaintiff] last worked in October 2009 . . . (Tr. 16).

> [T]he objective evidence in the record does not support [plaintiff's] assertion that she needs to go to the restroom thirty times per day. (Tr. 16).

> [Plaintiff] takes a muscle relaxer that helps for her fibromyalgia, but she is not currently seeing a

---

[3] However, the court acknowledges that Dr. Winkler's board certification in rheumatology indicates a specialized knowledge as to fibromyalgia.

urologist or taking any medication for her interstitial cystitis. (Tr. 16).

In November 2009, [plaintiff] presented to [Dr. Foos] and reported she was doing pretty well and looking for a new job. (Tr. 17).

[Plaintiff's] activities of daily living are inconsistent with her allegation of disability. According to her functional reports, she can provide for her own personal care, prepare meals, shop for groceries, drive, manage her money, read, watch television, clean around the house, do the laundry, iron, exercise, use a computer, and work as a nanny. Similarly, functional reports completed by [plaintiff's] father, mother, aunt, and friends indicate [plaintiff] can cook, shop for groceries, manage her own finances, perform household chores, watch television, read, run errands, clean, vacuum, and workout at the gym. (Tr. 18).

The ALJ also referred to the conclusions of a State agency medical consultant (Dr. Nimmagadda) who affirmed a RFC evaluation much like the RFC evaluation of Dr. Winkler. (Tr. 17-18).

Plaintiff contends that the denial of benefits should be reversed because the ALJ did not identify the inconsistencies between Dr. Foos's opinions and the record as a whole or the treatment notes. Plaintiff's counsel cites four cases: Krauser v. Astrue, 638 F.3d 1324, 1331 (10th Cir. 2011); Cagle v. Astrue, 266 Fed.Appx. 788, 794 (10th Cir. 2/25/2008); Langley, 373 F.3d at 1123; and Hamlin v. Barnhart, 365 F.3d 1208, 1217 (10th Cir. 2004). In Krauser, the case was remanded in part because the ALJ mistakenly accused the treating physician of not referencing

records of objective testing, the ALJ failed to state what weight (if not controlling weight) would be attached to the treating physician's opinion, and the ALJ did not reference the portions of the record with which the treating physician's opinion was inconsistent. 638 F.3d at 1331. In Cagle, the court found it was legally insufficient for an ALJ to essentially reject a treating doctor's assessment because of "troubling inconsistencies" in the doctor's records, without explanation of those inconsistencies. 266 Fed.Appx. at 793. The court further noted that it did not find such inconsistencies in its own examination of the record. The Langley case, like Cagle, involved an ALJ's rejection of a treating physician's opinion on the grounds that it was not supported by the objective evidence including the doctor's own records. The court, however, found no obvious inconsistencies and without further explanation from the ALJ decided that the ALJ's rejection of the treating doctor's opinion was not supported by the record. 373 F.3d at 1122-23. In Hamlin, the ALJ failed to give any specific reason for finding that a treating doctor's assessment was inconsistent with the overall case record or to highlight the portions of the record with which the doctor's assessment was inconsistent. 365 F.3d at 1217. The ALJ also ignored evidence which was consistent with the assessments of two treating physicians. Id. at 1217-19.

Unlike the ALJ in _Krauser_, the ALJ in this case did not mistakenly accuse Dr. Foos of failing to reference records of objective testing; nor did the ALJ in this case fail to state what weight she attached to Dr. Foos's opinion. Furthermore, unlike all of the cases just discussed, the ALJ in this case did refer to and highlight inconsistent evidence which is contained in Dr. Foos's records. The ALJ could have been more complete. But, the court finds that the ALJ's findings are supported by substantial evidence.

Dr. Foos's records refer to plaintiff working and looking for work in 2009 (Tr. 505, 521), although Dr. Foos stated in her checklist RFC form that plaintiff had been functioning at the level described on the form since 2006. (Tr. 536). Dr. Foos's records indicate that plaintiff has exercised or worked out regularly (Tr. 502, 625, 640, 720, 721, 725) and that plaintiff has done babysitting for two kids (ages 1 and 4) which kept her pretty busy (Tr. 502). Plaintiff reported to Dr. Foos on November 4, 2009, shortly after her alleged onset date of disability, that she was doing "pretty well." (Tr. 505). In addition, the functional reports in the administrative record provide support for the ALJ's conclusions that plaintiff's activities of daily living (as described above) are inconsistent with the level of disability described by Dr. Foos. The court has examined the functional reports and would not claim that

they are "black and white." The reports indicate that on good days plaintiff leaves her home, shops, exercises, babysits, engages in social activities and takes care of her house. But, the reports also indicate that there are bad days when plaintiff stays at home because of a low energy level, cancels planned activities at the last minute because she is not feeling well, and needs help doing easy things. The functional reports are not clear as to how often plaintiff has bad days; nor do they explain how to reconcile her activities on "good days" with her alleged IC symptoms. The job of weighing the evidence is the ALJ's. After careful consideration, the court finds that the evidence supporting the ALJ's assessment of Dr. Foos's opinion is sufficient.

Plaintiff further objects to the ALJ's statement that Dr. Foos's opinions appear to be based on plaintiff's subjective complaints. Plaintiff argues that the diagnosis of plaintiff's maladies necessarily depends upon subjective complaints. This is not disputed by defendant. But, defendant contends that plaintiff's point is not relevant because the ALJ was referring to Dr. Foos's medical source statement in which she assessed plaintiff's RFC, not the diagnosis of fibromyalgia or IC. This appears correct. The ALJ made the reference to plaintiff's subjective complaints in the context of Dr. Foos's RFC form. (Tr. 17). The record indicates that Dr. Foos relied upon

plaintiff's comments to fill out the form. Dr. Foos remarked that she and plaintiff "reviewed the paper work question by question, talking about restrictions on lifting, use of her arms and legs, standing, sitting and walking, and then other more intense activities such as bending, stooping, crouching, etc." (Tr. 499). This supports the ALJ's analysis of Dr. Foos's RFC statement.

The ALJ also stated with regard to Dr. Foos's January 6, 2012 letter that "Dr. Foos's opinions concern an issue reserved to the Commissioner." (Tr. 18). Plaintiff apparently concedes this is correct as to Dr. Foos's statements that plaintiff "is unable to maintain a fulltime position in any job that I can think of" and "[s]he would be unable to compete for gainful fulltime employment in the job market." But, plaintiff contends, citing SSR 96-5p, that these statements triggered a duty upon the ALJ to recontact Dr. Foos. The court disagrees. SSR 96-5p provides for contacting treating sources for clarification when the ALJ cannot ascertain the basis of the treating source's opinion from the case record.[4] This provision does not support a duty on the part of the ALJ in this case to recontact Dr. Foos because the basis for Dr. Foos's opinion that

---

[4] SSR 96-5p provides in part:  "Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."  1996 WL 374183 at *6.

plaintiff cannot work is made clear in the first paragraph of Dr. Foos's letter. There is no need for clarification. The differences between the ALJ's conclusions and Dr. Foos's conclusions illustrate a disagreement between the ALJ and the treating source, not a matter of confusion or ambiguity. So, SSR 96-5p, as argued by plaintiff, does not apply. See <u>Ferguson v. Commissioner of Social Security</u>, 628 F.3d 269, 274-75 (6th Cir. 2010); <u>Shaw v. Astrue</u>, 392 Fed.Appx. 684, 688-89 (11th Cir. 8/12/2010).

In summary, the court finds no error in the ALJ's assessment of Dr. Foos's opinions.

Plaintiff further argues that even if Dr. Foos's opinions did not deserve controlling weight, they warranted more weight than the opinions of Dr. Winkler because Dr. Winkler's opinions were not supported by superior evidence. To repeat, the ALJ gave more credit to Dr. Winkler's assessment because: "Dr. Winkler had the benefit of reviewing the entire medical record and her opinions are consistent with the weight of the evidence and her area of expertise." (Tr. 16). In addition, the ALJ commented with regard to plaintiff's IC that "Dr. Winkler noted [that plaintiff] did not see a lot of intervention or treatment in the record for the [plaintiff's] urinary urgency and opined the [plaintiff's] interstitial cystitis could improve if she tried some new forms of treatment." (Tr. 16). The ALJ also

noted that plaintiff testified that she took a muscle relaxer that helped with her fibromyalgia, but that she was not currently seeing an urologist or taking any medication for her IC. (Tr. 16). It seems clear from the record that the ALJ believed Dr. Winkler's assessment was more consistent with the weight of the evidence (such as plaintiff's activities of daily living described at Tr. 18) and the medical records, including the absence of intervention or treatment and the review of the state agency medical consultants. Another reasonable decisionmaker might weigh the evidence differently, but the court cannot conclude that the ALJ's analysis of Dr. Winkler's opinion versus Dr. Foos's opinion lacks reasonable and substantial support.

VII.  THE ALJ PROPERLY CONSIDERED PLAINTIFF'S CREDIBILITY.

Plaintiff asserts that the decision to deny benefits should be reversed because the ALJ's credibility determination is not supported by substantial evidence. The Tenth Circuit reminds us that: "'Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Newbold v. Colvin, 718 F.3d 1257, 1267 (10th Cir.

2013)(quoting Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005)).

Here, the ALJ determined that plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with [the ALJ's RFC] assessment." (Tr. 17). The evidence cited by the ALJ in support of this conclusion appears to be the same as that discussed in deciding what weight should be attached to Dr. Foos's and Dr. Winkler's opinions. Plaintiff contends that the ALJ improperly evaluated plaintiff's credibility because the ALJ placed too much emphasis upon: plaintiff's part-time work as a nanny and plaintiff's limited daily activities, particularly given the variability and unpredictability of fibromyalgia symptoms. Plaintiff's work as a nanny was only part of plaintiff's activities of daily living. The ALJ did not rely upon that part-time work alone to dispute plaintiff's credibility. The same is true for plaintiff's other activities of daily living. All the activities indicated to the ALJ that plaintiff was not as exhausted or as disabled from fibromyalgia and IC symptoms as she has alleged. In Newbold, 718 F.3d at 1266, the court affirmed an ALJ's decision to give diminished weight to a treating physician's assessment in a "fibromyalgia questionnaire" in part on the grounds that the extreme limitations assessed therein were inconsistent with the

claimant's activities of daily living which were described as:
independently caring for personal needs; doing household chores
such as dishes, vacuuming, and cooking; texting friends; using a
computer; driving; grocery shopping; reading; watching
television; visiting with friends; attending church on a weekly
basis; and attending church activities one night a week.[5]  In
Newbold, the Tenth Circuit also affirmed the ALJ's negative
credibility evaluation of the claimant on the basis of the same
activities of daily living.  Id. at 1267.  In her reply brief,
plaintiff asserts that the ALJ overstated the evidence from the
functional reports of plaintiff's activities of daily living.
This is arguable, but the court finds that there is sufficient
support in the record here to rely upon the ALJ's role of
weighing the evidence and assessing credibility.

     As occurred in the case at bar, an ALJ may also consider
the frequency and type of medical contacts and attempts to
obtain relief.  Id.; Huston v. Bowen, 838 F.2d 1125, 1132 (10th
Cir. 1988).  The record reflects that plaintiff had many medical
contacts for various problems, but at the time of plaintiff's
testimony she was receiving little medication or treatment for
her fibromyalgia or her IC.  In her reply brief, plaintiff

_____

[5] The ALJ also found that the answers in the questionnaire were inconsistent
with statements the doctor made in his own report dated the same day.  This
is somewhat comparable to Dr. Foos stating that plaintiff is disabled from
work, but also recording, in effect, that plaintiff has worked under the same
alleged disabilities from 2006 through October 2009.

asserts that the ALJ should not have relied upon a failure to obtain or follow prescribed treatment without considering factors set forth in <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1490 (10th Cir. 1993) and <u>Frey v. Bowen</u>, 816 F.2d 508, 517 (10th Cir. 1987). These cases may be distinguished because the ALJ in this case was noting an absence of medication and treatment, not a failure to follow prescribed treatment. See <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372-73 (10th Cir. 2000).

Finally, again in her reply brief, plaintiff raises credibility factors which are favorable to plaintiff, such as her work history and the side effects of medication. The court does not have good cause to believe that the ALJ ignored these points in her consideration even though she did not discuss them. The ALJ's failure to discuss them is not good grounds to reverse the decision to deny benefits. See <u>Poppa v. Astrue</u>, 569 F.3d 1167, 1171 (10th Cir. 2009)(a credibility finding does not require a factor-by-factor recitation of the evidence as long as the ALJ sets forth specific evidence he relies on to make the credibility decision).

After due consideration, the court finds that the ALJ properly conducted the credibility analysis in this matter.

VIII.  THE ALJ DID NOT VIOLATE THE REQUIREMENTS OF SSR 82-62.

Plaintiff next argues that the decision to deny benefits should be reversed because the ALJ failed to meet the

requirements of SSR 82-62 and make specific findings of fact as to the physical and mental demands of plaintiff's previous jobs as secretary, tariff agent, bill clerk, programmer analyst and conference services coordinator. The court rejects this argument. The ALJ did inquire of the vocational expert as to the exertional and skill level of plaintiff's previous jobs. (Tr. 42). The vocational expert testified that plaintiff could perform those jobs with the RFC level given by the ALJ even if plaintiff needed to use the bathroom at will. (Tr. 43). While the ALJ and the vocational expert did not address the mental demands of plaintiff's former jobs, that was not necessary because the ALJ determined that plaintiff did not have any more than a minimal mental limitation in her ability to perform work. (Tr. 14). Wells v. Colvin, 727 F.3d 1061, 1074-75 (10th Cir. 2013)(because claimant's RFC did not contain any mental limitations, the ALJ did not need to explore the mental demands of her previous work); Alvey v. Colvin, 536 Fed.Appx. 792, 795 (10th Cir. 8/28/2013)(same).

IX.   THE ALJ'S DECISION IS CONSISTENT WITH THE RECORD AS A WHOLE.

Plaintiff's final argument is that the ALJ's decision is unsupported by the record as a whole because the vocational expert testified that an individual who had to be away from a work station for 5 to 10 minutes for a restroom break 15 or 16

times during a workday would not be employable. (Tr. 45). The ALJ found, however, that plaintiff did not need to use the restroom up to 30 times per day. (Tr. 16). Plaintiff testified that she felt the urge and attempted to use the restroom that often during a full day.[6] (Tr. 57). The ALJ did not credit plaintiff's testimony because it was contrary to objective evidence in the record. The court has sustained the ALJ's credibility analysis. Therefore, the court shall reject plaintiff's argument that the decision to deny benefits is unsupported by the record.

X.  CONCLUSION

For the foregoing reasons, defendant's decision to deny plaintiff's application for benefits shall be affirmed.

**IT IS SO ORDERED.**

Dated this 17th  day of April, 2014, at Topeka, Kansas.


                         s/Richard D. Rogers_____
                         Richard D. Rogers
                         United States District Judge

---

[6] Unlike plaintiff's counsel in the reply brief, we do not construe plaintiff's testimony as stating she had the urge to use the bathroom 30 times in an 8-hour workday.